DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GOJO INDUSTRIES, INC., | ) | |
| Plaintiff, | ) | CASE NO. 5:09-CV-2612 |
| | ) | |
| v. | ) | |
| | ) | |
| BUCKEYE INTERNATIONAL, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Plaintiff GOJO Industries, Inc. ("GOJO") filed its Complaint against Defendant Buckeye

International, Inc. ("Buckeye") alleging, *inter alia*, that Buckeye's wall-mounted liquid dispenser

infringes upon one or more of the claims in one of GOJO's patents, specifically U.S. Patent No.

6,877,642 ("the '642 patent").  In opposition, Buckeye argues it is not an infringer and that the

'642 patent is invalid.  Prior to determining the validity of either parties accusations, the Court

must first determine "what the words in the claim mean."  *Markman v. Westview Instruments,*

*Inc.*, 517 U.S. 370, 374 (1996).  Deciding what the words in the claims mean "is a question of

law, to be determined by the court, construing the letters-patent, and the description of the

invention and specification of claim annexed to them."  *Id.* at 384.  Determining whether

infringement occurred "is a question of fact, to be submitted to a jury."  *Id.*

Accordingly, the Court held a *Markman* hearing October 25, 2010.  Through this

Memorandum Opinion the Court construes the disputed claim terms presented by the parties but

does not decide the question of infringement.

(5:09-CV-2612)

## I. Applicable Law

Claim construction is a matter of law to be decided exclusively by the Court. *Markman v. Westview Instruments*, 52 F.3d 967, 970-71 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1115 (Fed.Cir.2004). "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.Cir.2005) (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective date of the patent application." *Id.* at 1313. Absent an express intent to the contrary, a patentee is presumed to have intended the ordinary meaning of a claim term. *York Prods. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed.Cir.1996).

In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification and the prosecution history. *Phillips*, 415 F.3d at 1313. "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582. "The appropriate starting point [. . .] is always with the language of the asserted claim itself." *Comark Communications v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed.Cir.1998).

(5:09-CV-2612)

The claims also "must be read in view of the specification, of which they are a part."

*Phillips*, 415 F.3d at 1315.  The specification "is always highly relevant to the claim construction

analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."

*Vitronics*, 90 F.3d at 1582.  By expressly defining terms in the specification, an inventor may

"choose [. . .] to be his or her own lexicographer," thereby limiting the meaning of the disputed

term to the definition provided in the specification.  *Johnson Worldwide Assocs., Inc. v. Zebco*

*Corp.*, 175 F.3d 985, 990 (Fed.Cir.1999).  Although claims are interpreted in light of the

specification, this "does not mean that everything expressed in the specification must be read into

all the claims."  *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed.Cir.1983).  For instance,

limitations from a preferred embodiment described in the specification generally should not be

read into the claim language.  *See Comark*, 156 F.3d at 1187.  Notwithstanding, it is a

fundamental rule that "claims must be construed so as to be consistent with the specification, of

which they are a part."  *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371

(Fed.Cir.2003) (citations omitted).  Accordingly, if the specification reveals an intentional

disclaimer or disavowal of claim scope, the claims must be read consistent with that limitation.

*Phillips*, 415 F.3d at 1316.

In addition to consulting the specification, a court "should also consider the patent's

prosecution history, if it is in evidence."  *Markma*n, 52 F.3d at 980; *see also Graham v. John*

*Deere Co.*, 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ("[A]n invention is construed

not only in the light of the claims, but also with reference to the file wrapper or prosecution

history in the Patent Office.").  The prosecution history "constitutes a public record of the

-3-

(5:09-CV-2612)

patentee's representations concerning the scope of and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed.Cir.2005) (*quoting Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed.Cir.2000)).  "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317.  Any such disclaimer must be clear and unambiguous.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-25 (Fed.Cir.2003).

In addition to relying on intrinsic evidence in claim construction, a court may rely on "[e]xtrinsic evidence [which] consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.  Extrinsic evidence, however, may not be relied upon "for the purpose of varying or contradicting the terms of the claims."  *Id.* at 981 (citations omitted).

## II.  Claim Disputes of the '642 Patent

The '642 patent, issued on April 12, 2005, relates particularly to wall-mounted dispensers for liquids.  GOJO sought to improve upon the numerous variety of existing patent prior art involving this general method of dispensing liquids with the '642 patent.  Those improvements which are germane to the construction of the claims in dispute are discussed below.

The disputed claim terms are found in claims 1, 3 and 5 which state:

**1**. A dispenser for dispensing liquids from a collapsible bag, the bag having a pump attached thereto, comprising:

-4-

(5:09-CV-2612)

> a) a **back plate**;
>
> b) a cover **hingedly attached to said back plate** for movement between open and closed positions with respect thereto;
>
> c) **bag retaining and pump support means** carried by said back plate for receiving the collapsible bag and providing support for the pump;
>
> d) said bag retaining and pump support means having a **front wall** and a bottom wall, said front wall providing a pump **support surface** and said bottom wall providing a support surface for the collapsible bag; and
>
> e) **pressure means** carried by said cover for actuating the pump.

> **3**. The dispenser of claim 1 wherein said **bottom wall** projects outwardly from said back plate toward said cover; and opposed **side panels** projecting outwardly from said back plate toward said cover and lying in a plan substantially normal to the plane of said bottom wall.

> **5**. The dispenser of claim 1 wherein **latching means** are carried on said cover and said back plate for securing said cover in its closed position.

ECF No. 24-1 ('642 patent 7: 1-30) (emphasis added to show disputed terms).  Buckeye argues that the construction of three of the claim terms—1) bag retaining and pump support means, 2) pressure means and 3) latching means— is governed by 35 U.S.C. § 112 ¶ 6 as a means-plus-function.  GOJO asserts that only the claim term "pressure means" falls under the control of § 112 ¶ 6.  The Court will address these three disputed claim terms first and then discuss the remaining claim terms in the order that they appear in the patent.

### A.  **Means-Plus-Functions**

Section 112, ¶ 6 provides that:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in

-5-

(5:09-CV-2612)

> support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification or equivalents thereof.

This paragraph "allows a patentee to recite a function to be performed as a claim limitation rather than reciting structure or materials for performing that function." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed.Cir.2003).  In determining whether Section 112, ¶ 6 applies, the Federal Circuit has explained that "the use of the word 'means' triggers a presumption that the inventor used this term advisedly to invoke the statutory mandates for means-plus-function clauses." *York Products, Inc. v. Central Tractor Farm & Family Center*, 99 F.3d 1568, 1574 (Fed.Cir.1996).  Two rules, however, may overcome that presumption.  First, "a claim element that uses the word 'means' but recites no function corresponding to the means does not invoke § 112, ¶ 6." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed.Cir.1999).  Second, "even if the claim element specifies a function, if it also recites sufficient structure or material for performing that function, § 112, ¶ 6 does not apply." *Id.*

Once a court determines that § 112, ¶ 6 applies, construction of a means-plus-function term involves two steps.  First, the court must identify the claimed function, "staying true to the claim language and the limitations expressly recited by the claims." *Omega Eng'g, Inc.*, 334 F.3d at 1321.  Next, a court must "ascertain the corresponding structures in the written description that perform those functions." *Id.*  A structure is corresponding "only if the specification or the prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (*quoting B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed.Cir.1997)).

(5:09-CV-2612)

With these guidelines in mind, the Court applies them to the following disputed claim terms: bag retaining and pump support means, pressure means and latching means.  Additionally, the Court addresses the disputed claim term "bag retaining and pump support means" as two distinct terms, *i.e.*, bag retaining means and pump support means.

### 1. Bag retaining means

GOJO contends that the claim term "bag retaining means" does not fall within the purview of § 112 ¶ 6 as a means-plus-function because the claim recites sufficient structure or material for performing that function and therefore, overcomes the presumption that § 112 ¶ 6 applies to this term.  Buckeye retorts that the claim does not identify the specific structure for performing that function and therefore, § 112 ¶ 6 applies to the construction of this term.

Following the steps outlined above to determine if the patentee invoked the statutory mandates for means-plus-function clauses, the Court must determine if the claim specifies the function.  The function specified in the claim for the term "bag retaining means" is "for receiving the collapsible bag."  ECF No. 24-1 ('642 patent 7: 8; Claim 1(c)).  The common and relevant dictionary definition of "receive" is "to support the weight or pressure of."  Merriam-Webster Unabridged, http://unabridged.merriam-webster.com/.

Continuing on to the next step, the Court must determine if the claim recites sufficient structure or material for performing that function.  The structure recited in the claim that performs the stated function of receiving the collapsible bag is "said bottom wall providing a support surface for the collapsible bag."  ECF No. 24-1 ('642 patent 7: 13-14; Claim 1(d)).  Thus, the claim identifies that the bottom wall supports the collapsible bag which is the structure

-7-

(5:09-CV-2612)

performing the stated function.  The structure recited in the claim that performs the function of receiving the collapsible bag includes the word "support," which is found in the definition of "receive."  Additionally, the common and relevant dictionary definition of "support" is "bear the weight or stress of."  Merriam-Webster Unabridged, http://unabridged.merriam-webster.com/.  This recited structure is sufficient to perform the specified function.

Accordingly, the Court finds that the claim term "bag retaining means" does not fall within the purview of § 112 ¶ 6 as a means-plus-function because the claim recites sufficient structure or material for performing that function and therefore, overcomes the presumption that § 112 ¶ 6 applies to this term.  Given that, no construction of this term is necessary.

### 2.  Pump support means

GOJO and Buckeye assert the same arguments concerning the term "pump support means" as they assert for "bag retaining means."  GOJO argues the term falls outside of the control of § 112 ¶ 6 and Buckeye claims it does not.  Following the same analysis employed for the term "bag retaining means," the Court finds that the term "pump support means" does not fall within the purview of § 112 ¶ 6 as a means-plus-function.

The first step is to determine if the claim specifies the function.  The function specified in the claim for the term "pump support means" is "providing support for the pump." ECF No. 24-1 ('642 patent 7: 8-9; Claim 1(c)).  The common and relevant dictionary definition of "support" is "bear the weight or stress of."  Merriam-Webster Unabridged, http://unabridged.merriam-webster.com/.

(5:09-CV-2612)

The next step is to determine if the claim recites sufficient structure or material for performing that function.  The structure recited in the claim that performs the stated function of providing support for the pump is "said front wall providing a pump support surface."[1]  ECF No. 24-1 ('642 patent 7: 12-13; Claim 1(d)).  Thus, the claim identifies that the front wall supports the pump which is the structure performing the stated function of "providing support for the pump."  This recited structure is sufficient to perform the specified function.

Accordingly, the Court finds that the claim term "pump support means" does not fall within the purview of § 112 ¶ 6 as a means-plus-function because the claim recites sufficient structure or material for performing that function and therefore, overcomes the presumption that § 112 ¶ 6 applies to this term.  Given that, no construction of this term is necessary.

### 3.  Pressure means

Both parties agree that the term "pressure means" falls within the purview of § 112 ¶ 6 as a means-plus-function.  GOJO submits that the term "pressure means" should be construed as "a hinged push bar, and its equivalents."  ECF No. 28-1 at 4.  Buckeye argues that the term "pressure means" should "be construed to mean a push bar with a frustoconical portion and its equivalents."  ECF No. 35-2 at 10.

---

[1]  Buckeye contends that the structure is insufficient to perform the function of supporting the pump.  Buckeye incorporates language from the specification to bolster this argument.  The claim language itself, however, clearly states the function of the pump support means as well as the bag retaining means: providing support for the pump and for receiving the collapsible bag, respectively.  *See Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1303 (Fed. Cir. 1999) (noting it is error to import unnecessary functional limitations into the claim).  A court must identify the claimed function, "staying true to the claim language and the limitations expressly recited by the claims."  *Omega Eng'g, Inc.*, 334 F.3d at 1321.

-9-

(5:09-CV-2612)

The first step is to determine if the claim specifies the function.  The function specified in the claim for the term "pressure means" is "for actuating the pump."  ECF No. 24-1 ('642 patent 7: 15-16; Claim 1(e)).  The common and relevant dictionary definition of "actuate" is "to put into mechanical action or motion."  Merriam-Webster Unabridged, http://unabridged.merriam-webster.com/.  The next step is to determine if the claim recites sufficient structure or material for performing that function.  The claim does not recite any structure or material to perform the actuation of the pump.  The Court, therefore, concurs with the parties that § 112 ¶ 6 applies to the term "pressure means."

Given that § 112, ¶ 6 applies, construction of a means-plus-function term involves two steps.  First, the court must identify the claimed function.  As found above, the claimed function for the term "pressure means" is "for actuating the pump."  Next, a court must "ascertain the corresponding structures in the written description that perform those functions."  *Omega Eng'g, Inc.*, 334 F.3d at 1321.  A structure is corresponding "only if the specification or the prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (*quoting B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed.Cir.1997)).

GOJO argues that because the claimed function is to actuate "the pump," wherein the claim does not specify the type of pump, the structure should not include a frustoconical portion.  GOJO also contends that just because the preferred embodiment describes a dome pump, that does not control the interpretation of a means-plus-function term.  While this concept is correct in general, it does not hold true in this instance.

-10-

(5:09-CV-2612)

Upon review of the specification and the prosecution history, a dome pump is the only type of pump mentioned.  In fact, a dome-type pump is extolled for its benefits to the invention as a whole as well as to differentiate the invention from prior art.  Moreover, a hinged push bar alone, *i.e.*, without a frustoconical portion or its equivalents, cannot actuate the pump according to the specification and its figures.  Only a push bar with a section designed to match the pump configuration will actuate the pump.  *See Markman* Transcript at 37-38.  The invention described in the specification and the differentiating feature asserted in the prosecution history that allowed the invention to be patented speak only to the use of a dome pump.  Therefore, only a push bar with a portion designed to match a dome-like pump configuration will actuate such a pump.

Beginning with the section of the specification titled, "Summary of the Invention (a pertinent place to shed light upon what the patentee has claimed)," the Court finds several statements shining light on the benefits of using a dome pump in a dispenser.  *Rexnord Corp. v. The Laitram Corp, et al.*, 274 F.3d 1336, 1345 (Fed Cir. 2001).  For example:

> It has also been found that provision of a collapsible dome-like pump affixed adjacent the bottom of the bag on the front surface thereof will permit . . . the space normally occupied within the dispenser by the elongate tube/pump can be eliminated, thereby rendering the overall dispenser more efficient by storing a greater quantity per refill.
>
> Utilization of such a collapsible dome-like pump also reduces the pressure required to activate the pump.
>
> Accordingly, production of an improved wall-mounted dispenser for liquids of the character described becomes the principal object of this invention . . . .

-11-

(5:09-CV-2612)

ECF No. 24-1 at 10  ('642 patent 3: 9-41).  These statements by the patentee in the Summary of

the Invention section teach only one type of pump configuration, a dome pump.  While not by

themselves resolving the dispositive issue, these statements support Buckeye's argument.

Next, the Court turns to the section titled, "Brief Description of the Preferred

Embodiments."  Specifically,

> The pressure or push bar **40** also has a depressed frustoconical portion **42** which, in
> the preferred embodiment of the invention, is fabricated from a clear, transparent
> material and terminates in a concave wall **42***a* for purposes which will be described
> more fully below.

ECF No. 24-1 at 10  ('642 patent 4: 33-37).  This statement teaches that the pressure or push bar

is equipped with a *required* frustoconical portion to actuate the pump while the frustoconical

portion itself *may be* fabricated from a clear, transparent material.  Again, this statement alone is

not dispositive of the issue, but further supports Buckeye's position.

Additional statements from this section include[2]:

> Depression or collapse of the dome **61***a* by actuation of the pressure or push bar **40**
> will provide pressure . . . . Release of pressure on resilient dome **61***a* permits it to
> return to its expanded condition . . . .

> It will be apparent then that movement of the pressure or push bar **40** toward the back
> plate **20** will cause frustoconical portion **42** to collapse the dome, which is supported
> by bag retainer and pump support **80** . . . .

ECF No. 24-1 at 11  ('642 patent 5: 39-51).  These statements teach that the portion of the

pressure or push bar that actuates the pump is the frustoconical portion, not just the push bar.

_____

[2]  The Brief Description of the Preferred Embodiments section contains numerous
additional references to a dome-type pump.  This section does not contain a reference to any
other type of pump used in the invention.

-12-

(5:09-CV-2612)

These statements alone are not dispositive of the issue, but continue to bolster Buckeye's

argument.

Lastly, the Court turns to the prosecution history of the '642 patent.  In order to receive its

patent on the dispenser, GOJO had to overcome similarity to prior art.  Specifically, the Olson

and Thomsen patents.  *See* 24-2 at 56-58.  The following passage written by GOJO in response to

a rejection of its patent claims supports the intent to use a dome-like pump in patent '642:

> The Olson patent was described by the Examiner as containing all of the
> elements of original Claim 1.  However, it is noted that Olson does not, in fact,
> define or disclose a pump support and bag retaining means having a front wall and
> bottom wall with the front wall providing a pump support surface.  The only pump
> disclosed in Olson is, in fact, the tube 27 which serves as the pump to dispense the
> material.  This pump depends from the bottom of the bag and is activated by
> depressing the pressure member 22 against it and the tube 27 against the back up
> member 36.  This is substantially different from a combined bag retaining and pump
> support means having a bottom wall and a front wall, wherein the bag is supported
> on the bottom wall and the pump is received on the front wall.  As pointed out in
> Applicant's specification, one of the objects of this invention is to avoid the wasted
> space in a typical "tube-type" dispenser by providing the pump on the front surface
> of the bag and eliminating the wastage of space beneath the bag.  There is no
> structure in Olson which would permit this and, in fact, Olson is simply a very typical
> tube-type dispenser of which there are many in the prior art of record in this
> application. That being the case, it is submitted that Claim 1, as amended, is clearly
> patentable over Olson either under 35 U.S.C. 102 or 35 U.S.C. 103.  Accordingly, it
> is submitted that not only independent Claim 1, but those claims which depend
> therefrom are similarly clearly patentable.

> The Examiner has also rejected Claims 2, 13, 14, 15, 18/13, 20/13, 21120113
> and 22 under 35 U.S.C. 103(a) as being unpatentable over the combination of Olson
> and Thomsen.  The Thomsen reference is believed to be cited as allegedly showing
> a dome shaped pump 18.  However, item 18 is a button-like insert which is simply
> dropped into the pocket between panels 11 and 12 and is not "attachable" to the bag
> as defined in Applicant's claims and does not project from the front of the bag but
> depends from the bottom as clearly shown in Figures 1 and 2 of the Thomsen
> drawings.  Insert 18 merely serves as a spring.  That being the case, it is submitted
> that the amended claims clearly define patentable subject matter over the
> combination of Olsen and Thomsen.

(5:09-CV-2612)

ECF No. 24-2 at 56-67. Here, GOJO differentiates its attached dome pump from the Thomsen "button-like insert" that is not attached. These passages further support Buckeye's argument that the pressure or push bar should include a frustoconical portion or its equivalents because the specification and prosecution history support only the use of a dome-like pump in the invention.

As found above, the claimed function for the term "pressure means" is "for actuating the pump." "[T]he corresponding structure in the written description that perform[s] [that] function[]" is a hinged push bar with a frustoconical portion and its equivalents. *Omega Eng'g, Inc.*, 334 F.3d at 1321. The aforementioned structure is corresponding because the specification and the prosecution history clearly link that structure to the function of actuating the pump. *See Id.* (*quoting B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed.Cir.1997)). Accordingly, the Court holds "pressure means" is to be construed as "a hinged pressure or push bar with a frustoconical portion and its equivalents."

### 4. Latching means

GOJO argues that the claim term "latching means" does not fall within the purview of § 112 ¶ 6 as a means-plus-function because "the word 'latching' itself conveys the structure, i.e., 'a latch.'" ECF No. 28-1 at 6. Buckeye, on the other hand, argues that this claim term is a means-plus function that falls within the purview of § 112 ¶ 6. ECF No. 28-1 at 6.

The first step is to determine if the claim specifies the function. The undisputed function specified in the claim for the term "latching means" is "for securing said cover in its closed position." ECF No. 24-1 ('642 patent 7: 29-30; Claim 5). The common and relevant dictionary definition of "securing" is "to make fast : tie down : SEAL <secure a door> <secure the hatches

-14-

(5:09-CV-2612)

of a ship> <secure a letter with a wax seal>."  Merriam-Webster Unabridged,

http://unabridged.merriam-webster.com/.  The next step is to determine if the claim recites

sufficient structure or material for performing that function.  GOJO submits that the word

"latching,"from the term "latching means," "connotes [] structure to the noun 'means' as a

gerund functioning as an adjective."  ECF No. 35-1 at 9.  In other words, the term "latching

means" connotes the structure that performs the function—a latch.  This argument is not well

taken.

    To begin with, a gerund does not function as an adjective.  A gerund is a verbal ending in

-ing that functions as a noun.  Adding -ing to the verb "latch" forms the gerund "latching" if used

in the following manner: Latching a door is simple.  The gerund "latching" begins the phrase

"latching the door," which forms the subject of this sentence.  In claim 5 of the '642 patent,

however, "latching" is not used as a gerund, but it is used as a present participle.  A participle is a

verbal that functions as an adjective.  A present participle always ends in -ing.  In claim 5 of the

'642 patent, the word "means" is a noun and the word "latching" is a present participle

functioning as an adjective modifying the noun "means."  Because the word "latching" in claim 5

of the '642 patent is functioning as an adjective, claim 5 does not recite sufficient structure or

material (a noun) for performing the function of securing said cover in its closed position.  The

Court, therefore, finds that § 112 ¶ 6 applies to the term "latching means."

    Given that § 112, ¶ 6 applies, construction of a means-plus-function term involves two

steps.  First, the Court must identify the claimed function.  As found above, the claimed function

for the term "latching means" is "for securing said cover in its closed position."  ECF No. 24-1

-15-

(5:09-CV-2612)

('642 patent 7: 29-30; Claim 5).  Next, the Court must "ascertain the corresponding structures in the written description that perform those functions."  *Omega Eng'g, Inc.*, 334 F.3d at 1321.  A structure is corresponding "only if the specification or the prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (*quoting B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed.Cir.1997)).

The corresponding structure that performs the function of securing said cover in its closed position is found only in the specification.  Upon examination of the prosecution history provided to the Court, it cannot find any reference to a structure that performs this particular function.  Thus, because it must ascertain a corresponding structure, the Court relies on the structure described in the specification as it is the only structure that performs the claimed function.

The specification alludes to the structure as "[a] simplified, unique latching arrangement."  ECF No. 24-1 at 11 ('642 patent 6:48).  The specification then clearly describes the structure that performs the function recited in the claim.  *See* ECF No. 24-1 at 11 ('642 patent 6:48-62).  Accordingly, the Court holds "latching means" is to be construed as "a slidable actuator carried by the back plate with a beveled surface on its upper end; the cover with a flexible lip at its top that has a mating beveled surface on its leading edge for engagement with the slidable actuator and an engagement wedge for engagement with the back plate."

### B.  The Remaining Disputed Claim Terms

The remaining disputed claim terms are found in claims 1 and 3 which state in relevant part:

-16-

(5:09-CV-2612)

**1**. A dispenser for dispensing liquids from a collapsible bag, the bag having a pump attached thereto, comprising:

a) a **back plate**;

b) a cover **hingedly attached to said back plate** for movement between open and  closed positions with respect thereto;

. . .

d) said bag retaining and pump support means having a **front wall** and a bottom wall, said front wall providing a pump **support surface** and said bottom wall providing a support surface for the collapsible bag; and

. . . .

**3**. The dispenser of claim 1 wherein said **bottom wall** projects outwardly from said back plate toward said cover; and opposed **side panels** projecting outwardly from said back plate toward said cover and lying in a plan substantially normal to the plane of said bottom wall.

ECF No. 24-1 ('642 patent 7: 1-27) (emphasis added to show disputed terms).  GOJO submits that each of these remaining claim terms requires no construction and should be given their respective plain and ordinary meaning.  Buckeye, on the other hand, proposes a definition that the Court should use for each of these claim terms.  The Court rules as follows.

### 1. Back plate

Buckeye proposes the construction of the claim term "back plate" as "the portion of the dispenser that mounts to the wall."  While the specification indicates that the back plate may perform this particular function, the back plate, based merely upon a simple reading of claim 1, does more than mount the dispenser to the wall.  Further, even a cursory review of the specification indicates that the back plate is not limited to "the portion of the dispenser that

-17-

(5:09-CV-2612)

mounts to the wall."  For example, the back plate is attached to the cover, carries the bag

retaining and pump support means and carries a portion of the latching means.

Given that Buckeye disputes only that the back plate should be limited to the portion of

the dispenser that mounts to the wall and given that the specification and claim itself clearly

indicate that the back plate is not so limited, the Court holds that one of skill in the art would not

conclude that the back plate is limited to the portion of the dispenser that mounts to the wall.

Thus, the claim term "back plate" requires no construction and is construed as having its plain

and ordinary meaning within the context of the claims.

**2.  Hingedly attached to said back plate**

GOJO contends that no construction of this claim term is necessary and that it should

receive its plain and ordinary meaning.  GOJO's argument is based upon the general rule

(discussed below) that it is improper for a court to import limitations from an embodiment, even

a preferred embodiment, into a claim.[3]  Buckeye counters that the language of the specification

takes the claim construction of this term outside the parameters of the general rule.  Therefore,

Buckeye proposes the claim term "hingedly attached to said back plate" be construed as

"connected by a fixed integral cross bar located on the bottom edge of the cover and hook-like

members on the back plate that snap over the cross bar to allow the cover to swing between the

---

[3]  GOJO's assertion of the doctrine of claim differentiation that would preclude
Buckeye's proposed construction is not applicable in this instance.  First, Buckeye's proposed
definition comes from the specification, not the other claim terms.  Also, "[c]laim differentiation
is a guide, not a rigid rule.  If a claim will bear only one interpretation, similarity will have to be
tolerated."  *Autogiro Co. of America v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 404 155
USPQ 697, 708 (1967).

-18-

(5:09-CV-2612)

open and closed positions." ECF No. 28-1 at 1-2.  For the following reasons, the Court finds

Buckeye's argument well taken.

"The importance of the specification in claim construction derives from its statutory

role." *Phillips*, 415 F.3d at 1316.  The patent statute requires that a specification "shall contain a

written description of the invention, and of the manner and process of making and using it, in

such full, clear, concise, and exact terms as to enable any person skilled in the art to which it

pertains, or with which it is most nearly connected, to make and use the same . . . ." 35 U.S.C. §

112; *see Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 433 F.3d 1373, 1374 (Fed.Cir.2006)

(per curiam) (stating that the specification statute contains two separate requirements, a written

description and an enablement requirement); *Capon v. Eshhar*, 418 F.3d 1349, 1360

(Fed.Cir.2005) (" [A]lthough the legal criteria of enablement and written description are related

and are often met by the same disclosure, they serve discrete legal requirements.").  "In light of

the statutory directive . . . the specification necessarily informs the proper construction of the

claims."  *Phillips*, 415 F.3d at 1316 (*citing Renishaw PLC v. Marposs Societa' per Azioni*, 158

F.3d 1243, 1250 (Fed.Cir.1998) ("Ultimately, the interpretation to be given a term can only be

determined and confirmed with a full understanding of what the inventors actually invented and

intended to envelop with the claim.  The construction that stays true to the claim language and

most naturally aligns with the patent's description of the invention will be, in the end, the correct

construction.")).  Accordingly, where a patentee reveals in the specification a "special definition

given to a claim term . . . that differs from the meaning it would otherwise possess . . . the

inventor's lexicography governs." *Id.* (*citing CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d

(5:09-CV-2612)

1359, 1366 (Fed.Cir.2002)).  Similarly, if the specification reveals "an intentional disclaimer, or

disavowal, of claim scope by the inventor . . . the inventor has dictated the correct claim scope,

and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.*

(*citing SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44

(Fed.Cir.2001)).  If neither a unique lexicography nor a disavowal of claim scope appear in the

specification, the "ordinary meaning, to one skilled in the art, of the claim language controls."

*Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed.Cir.1998).

        GOJO argues that while Buckeye's proposed construction constitutes a preferred

embodiment of the invention, it does not act to limit the claims.  ECF No. 26 at 7.  In *Rexnord*,

the Federal Circuit stated: "Our case law is clear that an applicant is not required to describe in

the specification every conceivable and possible future embodiment of his invention."  274 F.3d

at 1344.  The Court agrees that as a general rule, the Federal Circuit has found it improper to

import limitations from an embodiment, even a preferred embodiment, into a claim.  *Phillips*,

415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the

invention, we have repeatedly warned against confining the claims to those embodiments . . . .  In

particular, we have expressly rejected the contention that if a patent describes only a single

embodiment, the claims of the patent must be construed as being limited to that embodiment.")

(citations omitted).  In *Lizardtech*, however, the Federal Circuit made this statement: "Claims

are not necessarily limited to preferred embodiments, but, if there are no other embodiments, and

no other disclosure, then they may be so limited.  One does not receive entitlement to a period of

exclusivity for what one has not disclosed to the public . . . merely calling an embodiment

-20-

(5:09-CV-2612)

'preferred,' when there are no others, does not entitle one to claims broader than the disclosure."[4]

*Lizardtech*, 433 F.3d at 1375.

The Court notes that the language of the specification contains a disavowal of claim scope as it relates to the "hingedly attached" language at issue.  The specification reads: "It will be noted that *there is no conventional hinge pin* as such and that, when thus assembled, the dispenser **10** is nearly tamper proof."  ECF No. 24-1 at 11 ('642 patent 5: 16-18) (emphasis added).  This language teaches the limited scope of this particular part of the invention and is treated as dispositive, thus, negating the above mentioned general rule of claims construction.  *Phillips*, 415 F.3d at 1316 (citation omitted).  Additionally, the specification refers to the invention as "providing a unique hinge structure" and as "hingedly connected . . . in a unique fashion."[5]  ECF No. 24-1 at 9-10 ('642 patent 2: 49-51; 4: 10).  Lastly and importantly, the description set forth in the specification, the only description sufficient to satisfy the enablement

---

[4]  GOJO, as illustrated throughout its briefs, would have the Court interpret the *entire* brief description section as a preferred embodiment of the invention because that is how the section is titled—"Brief Description of the Preferred Embodiments."  This section provides the only description of the invention and every word of this section cannot reasonably be construed as a preferred embodiment.  The wording in the section itself delineates which aspects of some of the invention are preferred and which are not.  For example, "The pressure or push bar **40** also has a depressed frustoconical portion **42** which, **in the preferred embodiment of the invention,** is fabricated from a clear, transparent material . . . ."  "**If desired**, pressure or push bar **40  may also** be provided with an offset area **43** . . . ."  This language signals the preferred or optional embodiments of the invention as opposed to the intended embodiment of the invention.

[5]  The inventors choice of the word "unique" bolsters the limited scope of this hinge structure when juxtaposed and compared against the language describing the hinge of the push bar: "the pressure or push bar **40** is simply hingedly attached."  ECF No. 24-1 at 11 ('642 patent 6: 37-38).

-21-

(5:09-CV-2612)

requirement of the specification statute, appears in the "Brief Description of the Preferred

Embodiments" section.[6]  It reads as follows:

> Referring to FIGS. **3, 4, 5, 6, 8** and **12,** it will be seen how the main components of the dispenser can be readily assembled.  Thus, the cover **30** has a fixed integral cross bar **33** adjacent its bottom edge, while the back plate **20**  has spaced hook-like members **22** on its bottom edge.  These hook members merely snap over the cross bar to interconnect the back plat **20** and cover **30.**

ECF No. 24-1 at 11 ('642 patent 5: 4-10).

Given the inventors' disavowal of claim scope and unique lexicography, and based on the

case law discussed above, the Court, appropriately, declines to follow the general rule that it is

improper to limit claim terms by the language of a preferred embodiment.  Therefore, the Court

finds Buckeye's argument well taken and construes the claim term "hingedly attached to said

back plate" as "connected by a fixed integral cross bar located on the bottom edge of the cover

and spaced hook-like members on the bottom edge of back plate that snap over the cross bar to

interconnect the back plate and cover."

### 3.  Front wall, Support surface, Bottom wall and Side panels

GOJO argues that these remaining claim terms need no construction and should be

given their respective plain and ordinary meaning.  Buckeye contends that each of these claim

terms be given a specific definition.

---

[6]  The '642 Patent specification contains a "Background of the Invention," a brief "Summary of the Invention," and a "Brief Description of the Drawings." ECF No. 24-1 at 9-10 ('642 patent, cols. 1-3).  Other than these items, the '642 Patent comprises nothing more than the drawings, the "Brief Description of the Preferred Embodiments," and the Claims themselves.

(5:09-CV-2612)

The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art in question at the time of the invention when read in the context of the specification and prosecution history. *Phillips*, 415 F.3d at 1313. Unlike the claim term "hingedly attached to said back plate," the specification does not contain disclaimer language or unique lexicography relating to these claim terms. Nor does the specification limit these claim terms in the manner of Buckeye's proposed constructions.

Accordingly, the claim terms "front wall, support surface, bottom wall and side panels" require no construction and are construed as having their respective plain and ordinary meanings within the context of the claims.

### III.  Conclusion

In summary, the Court construes the following challenged claim terms as follows:

**Pressure Means:**   "A hinged pressure or push bar with a frustoconical portion and its equivalents."

**Latching Means:**   "A slidable actuator carried by the back plate with a beveled surface on its upper end; the cover with a flexible lip at its top that has a mating beveled surface on its leading edge for engagement with the slidable actuator and an engagement wedge for engagement with the back plate."

**Hingedly Attached to Said Back Plate**:

"Connected by a fixed integral cross bar located on the bottom edge of the cover and spaced hook-like members on the bottom edge of back plate that snap over the cross bar to interconnect the back plate and cover."

The Court finds that the claim terms **Bag Retaining Means and Pump Support Means** do not fall within the purview of § 112 ¶ 6 as a means-plus-function and therefore, no construction is

-23-

(5:09-CV-2612)

necessary.  The Court finds that the claim terms **Back Plate, Front Wall, Support Surface,**

**Bottom Wall and Side Panels** require no construction and construes them as having their

respective plain and ordinary meanings as to a person of ordinary skill in the art at the time of the

invention and within the context of the claims.

In a separate order, the Court will set a status conference during which it will establish a

dispositive motion schedule and trial date.

IT IS SO ORDERED.


__March 28, 2011__                                   __*s/ David D. Dowd, Jr.*_____
Date                                                            David D. Dowd, Jr.
                                                                   U.S. District Judge

-24-